UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ELIJAH MONROE FORD,

        Plaintiff,

    v.

JEFFERY GETTING, et al.,

        Defendants.

_____/

Case No.   1:25-cv-1150

Hon.  Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses the following motions:

- a motion to dismiss filed by Defendant Prosecutor Jeffrey Getting, ECF No. 5, and

- a motion to dismiss filed by Defendants Kalamazoo Department of Public Safety (KDPS), KDPS Chief Dave Boysen, KDPS Deputy Chief Matthew Huber, KDPS Assistant Chief David Juday, KDPS Assistant Chief Victor Green, and Chief of Staff Ryan Tibbets, ECF No. 11.

Plaintiff has not responded to any of Defendants' motions.

Ford originally filed this lawsuit in the Kalamazoo County Circuit Court.   On September 25, 2025, the case was removed to the United States District Court for the Western District of Michigan.   ECF No. 1.   Plaintiff's Complaint, filed pursuant to 42 U.S.C. § 1983, alleges that the KDPS Defendants violated his Fourth Amendment

1

rights when they conducted a traffic stop and vehicle search on June 6, 2023.  *Id.*, PageID.17. Plaintiff further asserts that the search led to a false arrest, false imprisonment, and malicious prosecution by Kalamazoo County Prosecutor Jeffrey Getting.  *Id.*, PageID.18.

In ECF No. 5, Prosecutor Getting argues that the claims against him should be dismissed because Plaintiff fails to plead a malicious prosecution claim and that any such claim is barred by immunity.  ECF No. 5-1.  In ECF No. 11, the KDPS Defendants argue that: (1) Plaintiff's Complaint should be dismissed for failure to comply with Rule 8; (2) Kalamazoo Department of Public Safety should be dismissed because a police department is not a legal entity capable of being sued under §1983; (3) Plaintiff's claims against Defendants Boysen, Huber, Juday, Green, and Tibbets should be dismissed because they were not involved in the traffic stop; and (4) Defendants Boysen, Huber, Juday, Green, and Tibbets are entitled to qualified immunity.  ECF No. 11, PageID.73.

## II.   Factual Allegations

Ford asserts that an unknown KDPS officer pulled him over on June 6, 2023, because he "failed or didn't use his blinker coming off of the curb."  ECF No. 1, PageID. 13.   Ford states that the traffic stop extended to an "investigative pretextual stop."  *Id.*   Ford alleges that the officer had prior knowledge of Ford's passenger, Earnest Spencer, who had three outstanding warrants for his arrest.  *Id.*, PageID.14.   Ford says that the KDPS officer patted him down and did not find drugs or paraphilia.   However, Ford asserts that another KDPS officer patted down

2

Spencer and found crack cocaine on his person. *Id.*, PageID. 15. Next, Ford asserts that "a pistol was Said to have been laying on the Front passenger Seat with a Separate Fully load extended 22 round clip to a Glock-23 or (Glock 40. cal) Where Earnest Spencer was presently Sitting Prior to being Order out of the Vehicle." *Id.*, PageID.15 [*sic*]. Ford says the officers then searched the vehicle and found other drugs and a single bullet. *Id.* Ford asserts that the drugs did not belong to him. *Id.*, PageID. 15-16.

Next, Plaintiff asserts that he was charged for the drugs found in his vehicle. Ford says that on June 8, 2023, he was "bonded out" for $1500. *Id.*, PageID. 16. Ford asserts that, on or about September 6, 2023, Kalamazoo County Prosecutor Jeff Getting "maliciously prosecuted" him. Ford claims that he was charged with controlled substance delivery/manufacturing of methamphetamine, felon in possession of weapons/ammunition, and controlled substance delivery/manufacturing of marijuana. *Id.*, PageID. 13. Ford says that the charges were later dropped and dismissed by the Eighth District Court. *Id.*

### III. Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their

3

complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Plaintiff is proceeding *pro se*. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

**IV.  Analysis**

**A. Prosecutor Getting**

4

In his Complaint, Ford asserts that he sues Prosecutor Jeff E. Getting in his official capacity only.   ECF No. 1, PageID.11.

Defendants move to dismiss Plaintiff's official capacity claims as barred by the Eleventh Amendment.   The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.   *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).

Here, Plaintiff indicates that he sues Prosecutor Getting in only his official capacity.   Plaintiff's claim against Prosecutor Getting is barred by sovereign immunity.[1]   Accordingly, the undersigned respectfully recommends that the Court

---

[1]    "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."   *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).   Only the second exception is potentially at issue here.

grant Defendant Getting's motion to dismiss.

### B. KDPS Defendants

First, Defendants argue that KDPS is a department of public safety and cannot be a proper defendant in a §1983 lawsuit.   ECF No. 11, PageID.80.

The undersigned agrees that KDPS is not a separate legal entity capable of being sued under § 1983.   *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("[T]he Police Department is not an entity which may be sued . . . ."); *May-Shaw v. City of Grand Rapids*, No. 1:19-CV-117, 2019 WL 2265076, at *3 (W.D. Mich. May 28, 2019) ("It is well settled in Michigan that a police department is not a legal entity capable of being sued in a 42 U.S.C. § 1983 action." (citation omitted)).   However, the City of Kalamazoo, which governs KDPS, is a legal entity capable of being sued. And unlike the State of Michigan, the City of Kalamazoo is a "person" under § 1983. *Monnell v. Dep't. of Soc. Servs. Of the City of New York*, 436 U.S. 658 (1978).   The undersigned therefore construes Plaintiff's complaint as asserting claims against the City of Kalamazoo.   *See LaPlante v. Lovelace*, No. 2:13-CV-32, 2013 WL 5572908, at *2 (W.D. Mich. Oct. 9, 2013) (construing the plaintiff's complaint as asserting claims against Marquette County as the governing body of the Marquette County Sheriff's Department).

---

"Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id.* Ford is not seeking prospective injunctive relief for an ongoing violation of federal law.   ECF No. 1, PageID.22-23.   Thus, the *Ex parte Young* exception does not apply in this case.

Although the City of Kalamazoo is a "person" under § 1983, it "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. "[I]n other words, a municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." *Id.* (emphasis in original). Instead, Plaintiff must show that a policy or custom of the City of Kalamazoo acted as the "moving force" behind a violation of her constitutional rights. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508-09 (6th Cir. 1996). The first inquiry in evaluating such a claim is whether the municipality had a policy or custom. *Doe*, 103 F.3d at 509. "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

In *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001), the Sixth Circuit held that if "no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." Generally, if no constitutional violation can be attributed to an individual municipal actor, it is unlikely that the plaintiff was deprived of a constitutional right at all. *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 390 (6th Cir. Nov. 5, 2018). More recently, the Sixth Circuit has recognized that "in certain unusual circumstances, a

municipality might be liable for a constitutional violation even in the absence of a liable individual." *Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 645 (6th Cir. 2020); *Winkler v. Madison Cnty.*, 893 F.3d 877, 900 (6th Cir. 2018).  A *Monell* claim against a municipality may proceed without a claim against an offending officer, so long as it remains consistent with a finding of a constitutional violation.  *Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *6 (6th Cir. May 13, 2024).  There exists "scenarios when no officer may have acted unconstitutionally, but the municipality has nonetheless inflicted constitutional harm of a victim – such as a lack of action due to the failure to train, or where there are systematic problems with the health care system in the County jail."  *Grote v. Kenton Cnty.*, 85 F. 4th 397, 414 (6th Cir. 2023).

Here, Ford makes broad allegations that KDPS failed to properly train their staff and officers.   ECF No. 1, PageID.17.

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

In the opinion of the undersigned, Ford's failure to train claim against KDPS fails for multiple reasons.    First, Ford does not allege that KDPS "implicitly authorized, approved, or knowingly acquiesced" the arresting officers' behavior. Furthermore, Ford's allegations are conclusory and do not identify a policy or custom. Accordingly, in the opinion of the undersigned, Ford's Complaint fails to assert a *Monell* claim against KDPS.

Next, Plaintiff asserts failure to train claims against Defendants KDPS Chief Boysen, Deputy Chief Huber, Assistant Chief Juday, Assistant Chief Green, and Chief of Staff Ryan Tibbits.    Again, Ford does not allege that these individuals "implicitly authorized, approved, or knowingly acquiesced" the officers' actions.

Additionally, Ford's claims against these Defendants are in their official capacities only.[2]    Thus, Defendants argue that the claims are municipal liability claims that fail as a matter of law.    ECF No. 11, PageID.82.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."    *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).    "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"

---

[2]    It is also worthwhile to note that "[a]n individual capacity claim based on supervisory liability, like all individual capacity claims, requires an allegation of personal liability."    *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025).    "An official cannot be held liable for the constitutional violations of subordinates under a theory of *respondeat superior*, meaning that she 'cannot be held liable simply because ... she was charged with overseeing' subordinate officers who violated the plaintiff's constitutional rights."    *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)).    Finally, "[t]he complaint must plead that the official violated the Constitution through her own actions."    *Id.*

*Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55 (1978). Thus, an official capacity claim against an individual defendant is treated like a *Monell* claim against the entity of which the individual is an agent. *See, e.g.*, *Nelson v. Kentucky*, No. CV 5:23-014-KKC, 2023 WL 1863162, at *1 (E.D. Ky. Feb. 9, 2023) (reasoning that "Nelson's 'official capacity' claims against Engle and Jessica are construed as claims against the Commonwealth's Attorney's Office"). "*As long as the government entity receives notice and an opportunity to respond,* an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Mumford v. Basinski*, 105 F.3d 264, 270 n.8 (6th Cir. 1997) (italics in original) (quoting *Kentucky v. Graham*, 473 U.S. at 165-66)).

The first inquiry in evaluating a *Monell* claim is whether the entity had a policy or custom. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Then the policy or custom must be the moving force behind the constitutional injury. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–09.

Here, Plaintiff's official capacity claims against Chief Boysen, Deputy Chief Huber, Assistant Chief Juday, Assistant Chief Green, and Chief of Staff Tibbits are treated like a *Monell* claim against the entity of which they are agents. That entity is the KDPS. But, as explained above, the undersigned construes Plaintiff's complaint against KDPS as asserting claims against the City of Kalamazoo. Thus, it follows that notice to KDPS is also notice to the City of Kalamazoo sufficient for a *Monell* claim under *Mumford*.

10

Like Plaintiff's claims against KDPS, Plaintiff's claims against Chief Boysen, Deputy Chief Huber, Assistant Chief Juday, Assistant Chief Green, and Chief of Staff Tibbits for their failure to supervise and train are conclusory allegations. These allegations do not rise to pleading a policy or custom. Accordingly, in the opinion of the undersigned, Ford fails to state a *Monell* claim for failure to supervise against the KDPS Defendants.

## C. Qualified Immunity

Alternatively, the KDPS Defendants move to dismiss Plaintiff's constitutional claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the

11

right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232).   A court may address these steps in any order.   *Id.* (citing *Pearson*, 555 U.S. at 236).   A government official is entitled to qualified immunity if either step of the analysis is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.   *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court considers the state of the law at the second step.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."   *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct.   305, 308 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

As explained above, in the opinion of the undersigned, Ford fails to state a constitutional claim against Chief Boysen, Deputy Chief Huber, Assistant Chief Juday, Assistant Chief Green, or Chief of Staff Tibbits.   Accordingly, it is also the undersigned's opinion that these Defendants are entitled to qualified immunity.

## V.    Unserved Defendants

If the Court adopts the undersigned's recommendation with respect to the named Defendants, then only un-named and un-served Defendants will remain in the case.   A review of the docket indicates that Defendants Unknown Arresting Officer, Unknown Sergeant, Unknown Lieutenant, and Unknown Captain have never been served with a summons and complaint.    Service has not been completed because Plaintiff has not identified these parties.   The docket also indicates that Plaintiff has

13

not requested additional time to identify and serve these Defendants.   In fact, as noted above, Plaintiff has not responded to the motions to dismiss at issue in this R. & R.

Rule 4(m) of the Federal Rules of Civil Procedure provides that the Court must, after providing plaintiff with notice, either dismiss or order service within a specified time frame against a Defendant who has not been served within 90 days after the complaint was filed.   The undersigned respectfully recommends that the Court dismiss the unnamed Defendants in this case if Plaintiff has not identified them within the 14-day period for objections to this R. & R.

## VI.   Recommendation

For the reasons stated above, in the opinion of the undersigned, Plaintiff's claim against Prosecutor Getting is barred by sovereign immunity.   Additionally, Plaintiff fails to properly plead a *Monell* claim against Defendants KDPS, Chief Boysen, Deputy Chief Huber, Assistant Chief Juday, Assistant Chief Green, and Chief of Staff Ryan Tibbits.

Accordingly, the undersigned respectfully recommends that the Court **grant** Defendants' motions to dismiss.   ECF No. 5 &11.

Additionally, the undersigned respectfully recommends that the Court dismiss the unnamed Defendants in this case if Plaintiff has not identified them within the 14-day period for objections to this R. & R.

Dated:    June 2, 2026                              /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U.S. MAGISTRATE JUDGE

14

## <u>NOTICE TO PARTIES</u>

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).